## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **ESTATE OF JAMES FITZPATRICK, Deceased, by Stephanie McCoy, Administrator,**<br>c/o Marcus Sidoti, Esq.<br>Jordan \| Sidoti LLP<br>50 Public Square, Ste. 1900<br>Cleveland, Ohio 4413<br><br>        Plaintiff,<br><br>-vs-<br><br>**CITY OF ELYRIA, OHIO**<br>131 Court St.,<br>Elyria, OH 44035,<br><br>and<br><br>**DONALD MOSS,**<br>c/o Elyria Police Department<br>18 West Ave.,<br>Elyria, OH 44035,<br><br>and<br><br>**WILLIAM PELKO,**<br>c/o Elyria Police Department<br>18 West Ave.,<br>Elyria, OH 44035,<br><br>and<br><br>**DETECTIVE SUMPTER,**<br>c/o Elyria Police Department<br>18 West Ave.,<br>Elyria, OH 44035,<br><br>and<br><br>**DETECTIVE MIRACLE,**<br>c/o Elyria Police Department | CASE NO.:<br><br>JUDGE:<br><br><br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

18 West Ave.,
Elyria, OH 44035,

Defendants.

James Fitzpatrick, a forty-seven year old African American man, was detained in the Elyria Police Department. Within hours of his arrest, Mr. Fitzpatrick committed suicide in the holding cell. His suicide was not discovered for a significant period of time although the Defendants alleged he was being monitored. This is a civil rights and wrongful death action seeking monetary damages on behalf of the Estate of James Fitzpatrick.

## JURISDICTION AND VENUE

1. The Jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C §1983 et seq; 42 U.S.C. § 12131 (the "Americans with Disabilities Act"); §504 of the Rehabilitation Act of 1973 (§504); 29 U.S.C. § 794; Judicial Code, 28 U.S.C. §§1331 and 1343(a); and the Constitution of the United States.

2. Supplemental jurisdiction over the related state law claims is invoked pursuant to 28 U.S.C. §1367.

3. Venue is proper in this District under 28 U.S.C. § 1391(b). The parties reside, or, at the time the events took place, resided in this judicial district, and the events giving rise to plaintiff's claim also occurred in this judicial district.

## PARTIES

4. Stephanie McCoy was appointed Administrator of the Estate of James Fitzpatrick, deceased, by the Probate Division of the Circuit Court of Lorain County, Ohio, Case No. 2017 ES 00358, on March 18, 2019

5. Stephanie McCoy is a resident of Lorain County, Ohio and is James Fitzpatrick's sister.

6. Defendant Sergeant Donald Moss, was, at all times relevant to the allegations made in this complaint, a duly appointed police sergeant employed by the City of Elyria, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

7. Defendant Lieutenant William Pelko was, at all times relevant to the allegations made in this complaint, a duly appointed police lieutenant employed by the City of Elyria, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

8. Defendant Detective Sumpter was, at all times relevant to the allegations made in this complaint, a duly appointed police officer employed by the City of Elyria, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

9. Defendant Detective Miracle was, at all times relevant to the allegations made in this complaint, a duly appointed police officer employed by the City of Elyria, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

10. Defendant City of Elyria was and is a political subdivision and unit of local government duly organized under the laws of the State of Ohio residing in the Northern District of Ohio acting under the color of law. Defendant City of Elyria is a "person" under 42 U.S.C. § 1983. Defendant City of Elyria is the employer and principal of Defendants Moss, Pelko, and Sumpter and is responsible for the policies, practices, and customs of its Police Department.

11.    Defendant City of Elyria is responsible for ensuring that all of its facilities, including the Elyria Police Department, are in compliance with federal and state law, department or agency policies, rules, and regulations, and related standards of care.

12.    Defendant City of Elyria is a public entity within the meaning of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131(1).

## FACTS

13.    On March 20, 2017, at approximately 9:30 a.m., James Fitzpatrick, 47 years old, was arrested by the Elyria Police Department and Defendants Sumpter, Pelko, Moss, Miracle, and other officers, at his home.

14.    Mr. Fitzpatrick sustained a traumatic brain injury as a child. As a result, he is functionally disabled and is at risk of death from any strike to his head.

15.    The officers were made aware of Mr. Fitzpatrick's condition while at his home.

16.    While Mr. Fitzpatrick was restrained inside a police car outside of his residence, he continuously struck his head against the vehicle and with his handcuffs.

17.    Emotionally distraught and upset, Mr. Fitzpatrick told his siblings that they should sell his tools because he would not longer need them. He also asked them to take care of their mother and family. The Defendant police officers were aware of Mr. Fitzpatrick's comments.

18.    Defendants Pelko and Moss then transported Mr. Fitzpatrick to the Elyria Police Department at approximately 10:15 a.m. They booked Mr. Fitzpatrick and processed him into the holding facility.

19.    Upon information and belief, Defendants failed to perform a proper screening, evaluation, assessment, and medical intake of Mr. Fitzpatrick to evaluate and access his medical

and mental health status and the level of supervision required to ensure his safety while in custody prior to placing him in a holding cell at the Elyria Police Station.

20. All Defendants knew or should have known that Mr. Fitzpatrick's mental state placed him at a high risk level for suicide.

21. Defendant Moss searched Mr. Fitzpatrick's person, however failed to secure Mr. Fitzpatrick's shoelaces.

22. Mr. Fitzpatrick was placed into holding cell L1 inside the Elyria Police Station at approximately 10:40 a.m.

23. The Defendant officers allegedly monitored Mr. Fitzpatrick every 15-30 minutes.

24. At approximately 12:45 p.m., Defendant Pelko claims he observed Mr. Fitzpatrick standing near the toilet.

25. At approximately 12:55 p.m., Defendant Miracle claims observed Mr. Fitzpatrick in the same location. He reported this to Defendants Pelko and Moss.

26. Defendants Pelko, Moss, and Miracle entered the cell. Mr. Fitzpatrick was hanging from the ceiling near the toilet with his shoelaces tied around his neck. He was blue in the face and appeared lifeless.

27. Despite Defendants' knowledge of Mr. Fitzpatrick's despondency and risk of injury, they were deliberately indifferent to his risk of suicide.

28. The Defendant police officers failed to offer or procure appropriate intervention and precautions for his serious, immediate, and life-threatening conditions.

29. Defendant Moss and Elyria Police Detective Straub, a paramedic, manually checked Mr. Fitzpatrick's pulse. He determined that Mr. Fitzpatrick did not show any signs of

life. They left Mr. Fitzpatrick hanging from the ceiling and did not take any steps to conduct CPR or any other potentially life-saving techniques. They did not call EMS.

30. At approximately 2:10 p.m., the Lorain County Coroner's Office arrived; only then was Mr. Fitzpatrick's lifeless body cut down from the ceiling.

31. Defendants jointly agreed and/or conspired with one another, and others, to complete false, misleading, and incomplete official reports and to give a false, misleading, and incomplete version of the events to certain superiors and the public in order to cover up their own misconduct.

32. All of the actions of the Defendants and their named and unnamed co-conspirators, as set forth above and below, were taken jointly, in concert, and with shared intent.

33. All of the Defendants had a duty to care for and protect Mr. Fitzpatrick while he was in their custody and they failed to do so.

34. Defendants were deliberately indifferent to protecting Mr. Fitzpatrick from harm and failed to prevent said harm, further failed to provide urgently needed medical care and their conduct was unreasonable in failing to protect Mr. Fitzpatrick from harm.

35. Upon information and belief, none of the Defendants has been disciplined in any way as a result of the conduct, acts or omissions described in this Complaint.

36. As a direct and proximate result of these Defendants' actions, as detailed above, James Fitzpatrick and his heirs suffered, inter alia, injury, pain, distress, loss of love, affection, society, companionship and consortium as well as other injuries as a result of his death and the continuing loss of his life.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. §1983 Due Process Claim-**
**Against Defendants Moss, Sumpter, Pelko, Miracle**

37. All of the foregoing paragraphs are incorporated as though fully set forth here.

38. Plaintiff alleges an action pursuant to the Fifth and Fourteenth Amendments against Defendants Moss, Sumpter, Pelko, and Miracle.

39. James Fitzpatrick, a disabled arrestee, was in a special relationship with the Defendants, within the meaning of the case law interpreting 42 U.S.C. §1983 Fourth and Fifth Amendment, which guarantees equal protection of the laws and prohibits any person acting under color of law, from subjecting any person in custody to punitive conditions of confinement without due process of law.

40. Defendants, acting under color of law, intentionally and with conscious, callous, and unreasonable indifference deprived Mr. Fitzpatrick of his constitutional rights to due process and equal protection.

41. The Defendants' above-described conduct, acts and/or omissions constitute deliberate indifference to Mr. Fitzpatrick's serious medical needs, was unreasonable and violated his rights under the Fifth Amendment and Fourteenth Amendments to the United States Constitution to due process of law and equal protection, and violated 42 U.S.C. §1983.

42. Defendants' conduct, actions and/or omissions were the direct and proximate cause of the violations of Mr. Fitzpatrick's Fourth, Fifth and Fourteenth Amendment rights, his mental suffering, anguish, and other injuries.

43. Defendants are jointly and severably liable for this conduct.

**SECOND CLAIM FOR RELIEF**
**ADA and §504 Claim -**
**Against Defendant City of Elyria**

44. All of the foregoing paragraphs are incorporated as though fully set forth here.

45. Defendants City of Elyria, has been, and is, a recipient of federal funds, and are all covered by the mandate of Section 504 of the 1973 Rehabilitation Act (29 U.S.C. § 794). Section 504 requires that persons with disabilities be reasonably accommodated in their facilities, program activities, and services and reasonably modify such facilities, services, and programs to accomplish this purpose.

46. Further, Title II of the Americans with Disabilities Act (42 U.S.C. §§12131-12134) applies to the City of Elyria and has essentially the same mandate as that expressed in §504.

47. The Elyria Police Station is a facility, and its operation comprises a program and service, for §504 and Title II purposes.

48. Defendants failed and refused to reasonably accommodate Mr. Fitzpatrick's mental disabilities and to modify their jail facilities, operations, services, accommodations and programs to reasonably accommodate his disability, in violation of Title II of the ADA and/or §504, when he was in their custody.

49. Defendants' failures cost Mr. Fitzpatrick his life, and the violations of the ADA and/or §504 are the proximate cause of his death and the resulting damage to his estate.

50. Plaintiff's estate is entitled to recover for those damages sustained as described in this Complaint as a result of Defendants' violations of the ADA and §504 which caused his death.

51. Defendants are jointly and severably liable for this conduct.

**THIRD CLAIM FOR RELIEF**
**§ 1983 *Monell* claim-**
**Against Defendant City of Elyria**

52. All of the foregoing paragraphs are incorporated as though fully set forth here.

53. The actions of the Defendants were done pursuant to one or more interrelated de facto as well as explicit policies, practices and/or customs of the Defendant City of Elyria, their police department, their agents and/or officials.

54. Defendant City of Elyria, acting at the level of official policy, practice, and custom, with deliberate, callous, conscious and unreasonable indifference to Mr. Fitzpatrick's constitutional rights, authorized, tolerated, and institutionalized the practices and ratified the illegal conduct herein detailed, and at all times material to this Complaint the Defendant City of Elyria, their police department, their agents and/or officials had interrelated de facto policies, practices, and customs which include, inter alia,

   a) failing to properly train, supervise, discipline, transfer, monitor, counsel and otherwise control police officers, corrections officials and health care providers; failing to appropriately and timely identify serious mental health medical issues and needs of detainees like Mr. Fitzpatrick;

   b) failing to appropriately recognize suicidal tendencies in detainees, like Mr. Fitzpatrick, despite clear indications of such tendencies;

   c) failing to timely refer detainees like Mr. Fitzpatrick for appropriate mental health medical services, despite clear indications of serious need;

   d) failing to place detainees like Mr. Fitzpatrick on suicide watch even though known to be suicidal;

   e) failing and refusing to adequately and timely communicate critical information regarding mental health, including risk of suicide;

f) failing and refusing to provide adequate care, treatment and/or supervision for potentially suicidal detainees like Mr. Fitzpatrick;

g) failing and refusing to take adequate preventative measures upon discovery of suicidal tendencies of detainees like Mr. Fitzpatrick;

h) failing and refusing to correct, discipline, and follow up on deficiencies noted in care, treatment and/or supervision of detainees; and/or

i) possessing knowledge of deficiencies in the policies, practices, customs and procedures concerning detainees, and approving and/or deliberately turning a blind eye to these deficiencies.

55. In particular, police officers, correctional officers, health care providers and other employees are not properly trained in how to intake, screen, identify, refer and/or handle detainees with mental health issues, including persons with suicidal tendencies or ideations to avoid exacerbation of their symptoms and to manage and control the mental and physical health of detainees.

56. Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference and unreasonably; and encouraged, inter alia, the failure to adequately observe detainees to identify problematic behavior and interrupt any suicide attempt, the failure to adequately screen detainees for mental health status and suicidal tendencies, the failure to provide preventative health care to avoid suicide, and the failure to provide adequate resuscitation equipment and training.

57. Further, the constitutional violations and damages to Mr. Fitzpatrick that occurred as described herein were directly and proximately caused by: The unofficial and/or official, tacit and/or expressed; and otherwise unconstitutional policies of authorized policy makers of the

Defendants, who deliberately ignored subjecting detainees to unreasonable risk of harm, deliberately ignored violations of appropriate intake and screening procedures, and deliberately failed to supervise and control police officers, correctional officers and health care providers so as to prevent violations of detainees' rights.

58.     Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference and unreasonably; and, encouraged the Defendants to commit the aforesaid acts against Mr. Fitzpatrick and therefore acted as direct and proximate causes of said constitutional violations, and resulting injuries.

59.     The foregoing policies, practices, customs and omissions, maintained by the City of Elyria violated Mr. Fitzpatrick's rights to due process under the Fourteenth and Fifth Amendments.

## FOURTH CLAIM FOR RELIEF
### State Law Claim for Wrongful Death Pursuant to Ohio R.C. § 2125.02

60.     Plaintiff repeats and realleges the above allegations as if fully set forth herein.

61.     James Fitzpatrick is survived by his heirs who have suffered and will continue to suffer, *inter alia*, pecuniary loss, loss of his aide, comfort, consortium, society, companionship, guidance and protection, as well the grief and sorrow from the loss of the love and affection of and for their loved one, and otherwise suffered damages to their detriment.

62.     The wrongful death of Mr. Fitzpatrick was proximately caused by the neglect, default, and/or willful and wanton conduct of the Defendants.

63. The Defendant officers otherwise acted negligently, intentionally, and with malice and willful, wanton, and/or reckless indifference in committing the acts alleged in this complaint, which resulted in the injuries and wrongful death of James Fitzpatrick and his Estate.

64. As a direct and proximate result of the actions of the defendants in this complaint, Mr. Fitzpatrick died on March 20, 2017, subjecting the defendants to liability pursuant to Ohio R.C. § 2125.02.

### FIFTH CLAIM FOR RELIEF
#### Survivorship Action

65. All of the foregoing paragraphs are incorporated by reference and re-alleged as though fully set forth here.

66. Plaintiff further claims that as a direct and proximate result of the willful, wanton, reckless, and unconstitutional conduct of the Defendants as alleged herein, individually and/or jointly, and/or by and through their agents and/or employees, James Fitzpatrick was caused to suffer mental anguish and conscious physical pain and suffering prior to his death, for which compensation is sought.

67. The Defendant officers owed Mr. Fitzpatrick a duty of care, they breached that duty, and their breach of duty was the proximate cause of Mr. Fitzpatrick's death.

68. The Plaintiff brings this survivor action pursuant to Ohio Revised Code § 2305.21.

### DAMAGES

69. As a direct and proximate result of the acts set forth in this complaint, James Fitzpatrick sustained pain and suffering prior to his death.

70. As a further direct and proximate result of the wrongful death of James Fitzpatrick, his survivors and/or heirs and family have suffered damages, including but not limited to, the loss of his support, services, and society, including lost companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, as well as pecuniary losses.

71. As a further direct and proximate result of the wrongful death of James Fitzpatrick, the Decedent's survivors and/or heirs have suffered damages, including but not limited to, grief, depression, and severe emotional distress.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands that judgement be entered in her favor on all counts and prays the Court award the following relief:

A. Compensatory damages in an amount exceeding the jurisdictional amount in controversy requirement, to be determined at trial for the violation of Plaintiff's decedent's rights and his wrongful death;

B. Punitive damages in an amount to be determined at trial for the Defendants' willful, wanton, malicious, and reckless conduct;

C. Declaratory and injunctive relief against the City of Elyria enjoining unlawful policies, practices, and customs and ordering the institution of policies, procedures, and training for the Elyria Police Department to bring them into compliance with constitutional standards;

D. Attorneys' fees and the costs of this action pursuant to law; and

E. All other relief which this Honorable Court deems equitable and just.

**A JURY IS REQUESTED TO HEAR THIS MATTER**

/s/ Marcus Sidoti
Marcus S. Sidoti
Jordan | Sidoti LLP
The Terminal Tower
50 Public Square, Suite 1900
Cleveland, Ohio 44113
(office) 216-357-3350
(fax) 216-357-3305
marcus@jordansidoti.com

Attorney for Plaintiff, Stephanie McCoy, Administrator